# Ineligibility of New Jersey Transit Corporation Board Member for Appointment to Amtrak Board of Directors

A public member of the Board of Directors of the New Jersey Transit Corporation constitutes a representative of rail management under section 411(a) of the Amtrak Reform and Accountability Act of 1997 and is therefore ineligible for appointment to the Amtrak Board of Directors.

July 30, 1998

MEMORANDUM OPINION FOR THE COUNSEL TO THE PRESIDENT

This responds to your request for our opinion whether a public member of the Board of Directors of the New Jersey Transit Corporation ("NJTC") is eligible for appointment to the Amtrak Board of Directors, established pursuant to section 411(a) of the Amtrak Reform and Accountability Act of 1997, Pub. L. No. 105–134, sec. 411(a), § 24302, 111 Stat. 2570, 2588 ("Amtrak Reform Act" or "Act"). We conclude that the NJTC Board member would be a "representative[ ] of . . . rail management" under that provision and would therefore be ineligible for appointment to the Amtrak Board unless he or she resigned from the NJTC Board.

## I.

Criteria governing eligibility for appointment to the Amtrak Board are set forth in section 411(a) of the Amtrak Reform Act, which provides:

(C) Appointments . . . shall be made from among individuals who—

(i) have technical qualifications, professional standing, and demonstrated expertise in the fields of transportation or corporate or financial management;
(ii) *are not representatives of rail labor or rail management*; and
(iii) in the case of 6 of the 7 individuals selected, are not employees of Amtrak or of the United States.

49 U.S.C.A. § 24302(a)(2)(C) (West Supp. 1998) (emphasis added).

The NJTC, on whose board the potential appointee serves, is a corporation established in the executive branch of the Government of New Jersey. *See* N.J. Stat. Ann. § 27:25–4.a (West Supp. 1998). The NJTC is located within the New Jersey Department of Transportation, although it "shall be independent of any supervision or control by the department or by any body or officer thereof." *Id.*

Under N.J. Stat. Ann. § 27:25–4.b, the NJTC is governed by its Board of Directors. The NJTC Board consists of seven members: the New Jersey Commissioner of Transportation and the New Jersey State Treasurer, who serve ex officio; another member of the executive branch of the New Jersey Government appointed by the Governor; and four "public members" appointed by the Governor. *Id.*

Under the Amtrak Reform Act, the NJTC is both a "rail carrier" and a "commuter authority." The Act defines the term "rail carrier" to mean "a person, *including a unit of State or local government*, providing rail transportation for compensation." 49 U.S.C.A. § 24102(7) (West Supp. 1998) (emphasis added). Congress added the underscored language in 1997 to clarify the scope of the definition. *See* Amtrak Reform Act, sec. 407, § 24102, 111 Stat. at 2586. The Amtrak Reform Act also defines "commuter authority" as "a State, local, or regional entity established to provide, or make a contract providing for, commuter rail passenger transportation." 49 U.S.C.A. § 24102(3). The NJTC is a State entity that provides commuter rail transportation for compensation, *see* N.J. Stat. Ann. § 27:25–5.n (West Supp. 1998), and therefore constitutes a "rail carrier" and a "commuter authority" within the meaning of the Amtrak Reform Act. The question is whether members of the board of directors of such an entity are "representatives of . . . rail management" for purposes of the Act.

## II.

The term "representatives of . . . rail management" is not defined or explained in the text of the Amtrak Reform Act or otherwise in title 49 of the U.S. Code. The term, however, would certainly include those serving as the management of "rail carriers." Moreover, as discussed below, we conclude that officers and directors of a rail carrier are part of its management. Because the NJTC is a rail carrier, a member of its Board of Directors would be a "representative[] of . . . rail management."

We have considered the arguments supporting a contrary view. A memorandum on this issue, prepared by the law firm of Wilmer, Cutler & Pickering ("Wilmer, Cutler memorandum") and submitted to us by the American Public Transit Association, *see* Letter for Dawn E. Johnsen, Acting Assistant Attorney General, Office of Legal Counsel, from Daniel Duff, Chief Counsel and Vice President for Government Affairs, American Public Transit Association (May 27, 1998), argues that NJTC board members are not covered by section 411(a)(2)(C)(ii) because it does not explicitly prohibit service by board members of commuter authorities. The memorandum points out that when Congress amended the definition of "rail carrier" to include units of state and local governments, it did not similarly amend the term "rail management" to refer expressly to such authorities. The memorandum therefore concludes that Congress did not intend "rail management" to reach the management of state and local commuter authorities.

Because the term "rail management" was undefined both before and after the 1997 amendments, however, we do not believe that any conclusion can be drawn from Congress's not adding a reference to state and local governments or "commuter authorities" in the provision concerning "rail management." Both before and after the amendments, the provision on "rail management" has not expressly referred to *any* specific rail entities, and the failure to mention commuter authorities therefore has no particular significance. We find more significant Congress's express inclusion in 1997 of state and local commuter authorities, such as the NJTC, in amending the definition of "rail carriers."

We further believe that a member of the board of directors of a corporate state commuter authority such as the NJTC is part of the authority's "management." Most pertinently, the New Jersey Public Transit Act explicitly provides that the NJTC is "governed by [the] board," N.J. Stat. Ann. § 27:25–4.b, and "[t]he powers of the corporation shall be vested in the members of the board thereof," *id.* § 27:25–4.e. Thus, even apart from principles of general corporation law (discussed below), the special statute establishing the NJTC makes it clear that its board is responsible for its governance and, it necessarily follows, its management.

It is well settled under the general corporate law of New Jersey, moreover, that the management of a corporation's affairs is ultimately vested in its board of directors. As amended in 1988, the New Jersey corporation statute provides: "The business and affairs of a corporation shall be managed by or under the direction of its board, except as in this act or in its certificate of incorporation otherwise provided." N.J. Stat. Ann. § 14A:6–1(1) (West Supp. 1998).[1] *See generally Francis v. United Jersey Bank*, 432 A.2d 814, 822–24 (N.J. 1981) ("[A]ll directors are responsible for managing the business and affairs of the corporation."); *Gabriel v. Auf Der Heide-Aragona, Inc.*, 82 A.2d 644, 649 (N.J. Super. Ct. App. Div. 1951). Thus, whether viewed from the standpoint of the NJTC's particular enabling statute or that of general New Jersey corporation law, members of the NJTC's board would constitute part of its "management." Moreover, nothing in the text or legislative history of section 411 of the Amtrak Reform Act indicates that Congress intended to depart from such generally recognized understandings of the term "management" when it decided to exclude representatives of rail management, as well as representatives of rail labor, from eligibility for the Amtrak Board. Indeed, the context of the provision and the related definitions in the Act strongly reinforce the view that the term "rail management" would include the directors of a commuter authority.

---

[1] The Commissioners' Comment explaining the 1988 amendments states "This section was revised to reflect the fact that corporations are managed by their officers with the board providing supervision and overall direction." N.J Stat Ann § 14A.6–1, Commissioners' Comment—1988 Amendments (West 1988) That corporate officers manage the business and affairs of a corporation under the supervision and direction of the board of directors by no means removes the directors from their ultimate responsibility for corporate management, as made clear in the text of the New Jersey statute

In this regard, we disagree with the argument in the Wilmer, Cutler memorandum that NJTC directors should not be considered representatives of management in this context because they may be analogized to so-called "independent outside directors" as that concept is used in the corporation law of some states. *See, e.g., Rowen v. Le Mars Mut. Ins. Co.*, 282 N.W.2d 639 (Iowa 1979). Outside directors are usually defined as those who are neither officers nor employees of the corporation (although directors with special knowledge or experience such as legal counsel, the corporation's banker, or representatives of major corporate suppliers may be viewed as inside directors notwithstanding their lack of affiliation with the corporation). *Id.* at 652. Although the outside director concept is sometimes pertinent for determining the relative responsibilities and liabilities of inside and outside directors for the day-to-day management of corporate affairs under state corporate law, *id.*, it does not divorce outside directors from their fundamental responsibility as directors for conducting the affairs of the corporation, *see, e.g., Smith v. Van Gorkom*, 488 A.2d 858, 889 (Del. 1985) (where all directors of corporation, outside as well as inside, took unified position, all would be treated as one in determination of whether they were entitled to the protection of the business judgment rule in their approval of cash-out merger of the corporation); *Francis v. United Jersey Bank*, 392 A.2d 1233, 1242 (N.J. Super. Ct. Law Div. 1978), *aff'd*, 407 A.2d 1253 (N.J. Super. Ct. App. Div. 1979), *aff'd*, 432 A.2d 814 (N.J. 1981) ("In legal contemplation there is no such thing as a 'figurehead' director."). More to the point, the inside/outside director dichotomy has little practical relevance to the NJTC board, none of whose members would be viewed as "inside" directors in the conventional sense but all of whom share collective responsibility for the governance of the NJTC. *See* N.J. Stat. Ann. § 27:25–4.a.

We conclude, therefore, that a member of the NJTC Board would be a "representative[ ] of . . . rail management" for purposes of the Amtrak Reform Act and is therefore ineligible for appointment to the Amtrak Board unless he or she resigns from the NJTC Board.

BETH NOLAN
*Deputy Assistant Attorney General*
*Office of Legal Counsel*